1  STUART G. GROSS (Cal. Bar No. 251019)
   sgross@grosskleinlaw.com
2  BENJAMIN KLEIN (NY Bar No. 4265401)
3  (*pro hac to be filed*)
   bklein@grosskleinlaw.com
4  DANIEL C. GOLDBERG (Cal. Bar No. 287923)
   dgoldberg@grosskleinlaw.com
5  **GROSS & KLEIN**
6  The Embarcadero
   Pier 9, Suite 100
7  San Francisco, CA 94111
   t (415) 671-4628
8  f (415) 480-6688

9
   *Attorneys for Plaintiffs and the Putative Classes*
10 *Additional Counsel Listed on Signature Page*

11                **UNITED STATES DISTRICT COURT**

12             **SOUTHERN DISTRICT OF CALIFORNIA**

13
   CARL LESHER, SARAH METIVIER          Case No. **'15CV2144 JAH  WVG**
14 SCHADT, GREG STEARNS, AND
   KARREN FABIAN, on behalf of
15 themselves and all others similarly situated,   **CLASS ACTION COMPLAINT**

16                Plaintiffs,
                                                  **DEMAND FOR JURY TRIAL**
17        v.

18 BUMBLE BEE FOODS LLC,
   TRI-UNION SEAFOODS LLC,
19 STARKIST COMPANY, and KING
   OSCAR, INC.,
20
                Defendants.
21

22

23

24

25

26

27

28
   CLASS ACTION COMPLAINT

Plaintiffs Carl Lesher, Sarah Metivier Schadt, Greg Stearns, and Karren Fabian, by and through their undersigned attorneys, on behalf of themselves and all others similarly situated, complain and allege as follows. All allegations herein other than those relating directly to Plaintiffs are based on information and belief.

## NATURE OF THE ACTION

1.       This action arises out of a conspiracy by the largest producers of packaged seafood products ("PSPs") in the United States, its territories and the District of Columbia—Bumble Bee Foods LLC, Tri-Union Seafoods LLC, StarKist Company, and King Oscar, Inc. (collectively, "Defendants")—which began no later than July 24, 2011, and continues to the present (the "Class Period"), to fix, raise, maintain, and/or stabilize prices for PSPs within the United States, its territories and the District of Columbia in violation of Section 1 of the Sherman Antitrust Act (15 U.S.C. § 1).  As used herein, the term "PSPs" refers to shelf-stable seafood products (predominantly tuna) that are sold in cans, pouches or ready-to-eat serving packages.

## JURISDICTION AND VENUE

2.       Plaintiffs, on behalf of themselves and all indirect purchasers, bring this action under Section 1 of the Sherman Act, 15 U.S.C. §1, and Section 16 of the Clayton Act, 15 U.S.C. § 26, to obtain injunctive relief against all Defendants.

3.       The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337 over Plaintiffs' claims under Section 1 of the Sherman Act and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.  This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. §1367.  The state-law claims are so related to Plaintiffs' claims under Section 1 of the Sherman Act and Sections 4 and 16 of the Clayton Act that they form part of the same case or controversy.

4.       This Court also has subject matter jurisdiction over the state law claims pursuant to the Class Action Fairness Act of 2005, which confers federal

CLASS ACTION COMPLAINT                    -1-

jurisdiction over any class action in which "any member of a class of plaintiffs is a citizen of a State different from any defendant" and "in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."  28 U.S.C. §1332(d)(2)(A).

5.      Venue is proper in this District pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. § 1391(b), (c), and (d) because Defendants reside, transact business, are found within, and/or have agents within this District, and a substantial part of the events giving rise to Plaintiffs' claims occurred and a substantial portion of the affected interstate trade and commerce described below has been carried out in this District.

6.      This Court has personal jurisdiction over Defendants because, *inter alia,* each: (a) transacted business in this District; (b) directly or indirectly sold and delivered PSPs in this District; (c) has substantial aggregate contacts with this District; and (d) engaged in an illegal price-fixing conspiracy and agreement to limit capacity that was directed at, and had the intended effect of causing injury to, persons and entities residing in, located in, or doing business in this District.

## PLAINTIFFS

7.      Plaintiff Carl Lesher is a resident of the State of Oregon.  During the Class Period, Plaintiff indirectly purchased PSPs from one of more of the Defendants and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

8.      Plaintiff Sarah Metivier Schadt is a resident of the State of Illinois. During the Class Period, Plaintiff indirectly purchased PSPs from one of more of the Defendants and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

9.      Plaintiff Greg Stearns is a resident of the State of Maine.  During the Class Period, Plaintiff indirectly purchased PSPs from one of more of the

1  Defendants and has suffered pecuniary injury as a result of the antitrust violations

2  alleged herein.

3      10.    Plaintiff Karren Fabian is a resident of the State of Wisconsin.  During

4  the Class Period, Plaintiff indirectly purchased PSPs from one of more of the

5  Defendants and has suffered pecuniary injury as a result of the antitrust violations

6  alleged herein.

7                              **DEFENDANTS**

8      11.    Defendant Bumble Bee Foods LLC ("Bumble Bee") is a domestic

9  limited liability company with its principal place of business located at 9655

10 Granite Ridge Drive, Suite 100, San Diego, CA 92123.  Bumble Bee produces and

11 sells PSPs throughout the United States (including this District), its territories and

12 the District of Columbia.  Bumble Bee is privately owned by Lion Capital LLP

13 ("Lion"), based in the United Kingdom.

14     12.    Defendant Tri-Union Seafoods LLC, dba Chicken of the Sea

15 International, is a domestic limited liability company with its principal place of

16 business located at 9330 Scranton Road, San Diego, CA 92121.  Tri-Union

17 Seafoods LLC produces and sells PSPs throughout the United States (including this

18 District), its territories and the District of Columbia.  Unless otherwise indicated,

19 Tri-Union Seafoods LLC will be referred to herein as "CoS." CoS is owned by Thai

20 Union Frozen Products ("TUF"), a company based in Thailand.

21     13.    Defendant StarKist Company ("StarKist") is a domestic corporation

22 with its headquarters at 225 North Shore Drive, Suite 400, Pittsburgh, PA 15212.

23 StarKist produces and sells PSPs throughout the United States (including this

24 District), its territories and the District of Columbia.  StarKist is privately owned by

25 Dongwon Industries ("Dongwon"), based in South Korea.

26     14.    Defendant King Oscar, Inc. ("King Oscar") is a domestic corporation

27 with its principal place of business at 3838 Camino Del Rio North, Suite 115, San

28 Diego, California 92108.  King Oscar produces and sells packaged seafood

---

CLASS ACTION COMPLAINT                    -3-

products throughout the United States (including this District), its territories and the District of Columbia.

15.     Defendants CoS and King Oscar (together, "Tri-Union") are wholly owned by Thai Union Frozen Products, a public company headquartered in Thailand.

## UNNAMED CO-CONSPIRATORS

16.     On information and belief, at all relevant times, other producers of PSPs willingly conspired with Defendants in their unlawful restraint of trade.  All averments herein against Defendants are also averred against these unnamed co-conspirators.

## AGENTS

17.     The acts alleged to have been done by Defendants were authorized, ordered, or performed by their directors, officers, managers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs.

## INTERSTATE TRADE AND COMMERCE

18.     Throughout the Class Period, there was a continuous and uninterrupted flow of invoices for payment, payments, and other documents essential to the sale of PSPs in interstate commerce between and among offices of Defendants and their customers located throughout the United States, its territories and the District of Columbia.

19.     Throughout the Class Period, Defendants transported substantial amounts of PSPs in a continuous and uninterrupted flow of interstate commerce throughout the United States, its territories and the District of Columbia.

20.     Throughout the Class Period, Defendants' unlawful activities, as described herein, took place within and substantially affected the flow of interstate commerce and had a direct, substantial and reasonably foreseeable effect upon commerce in the United States, its territories and the District of Columbia.

## FACTUAL ALLEGATIONS

CLASS ACTION COMPLAINT

21.    PSPs are sold to club warehouses, retail groceries, grocery cooperatives, mass merchandisers, and drug stores, among others, who then resell PSPs to consumers. According to a May 2012 presentation by Bumble Bee, total United States retail sales of shelf-stable seafood products were $2.346 billion in 2011 and were estimated to be $2.397 billion in 2012.  In one report, Bumble Bee estimated that canned tuna represents 73% of this value. In the same report, Bumble Bee estimated that total United States retail sales of shelf-stable tuna were $1.719 billion in 2011 and were estimated to be $1.750 billion in 2012.

22.    Defendants are the largest domestic manufacturers of PSPs. The industry is highly concentrated. According to the aforementioned presentation by Bumble Bee, it had 29% of the domestic shelf-stable seafood market, CoS had 18.4% and StarKist had 25.3%. The remaining market share was comprised of smaller companies and private label brands. With respect to shelf-stable tuna, StarKist had 34.6% of the market, Bumble Bee had 27.8% and CoS had 19.4%. In December of 2014, the *Wall Street Journal* reported that the Defendants' respective shares of the domestic market for canned tuna were 13% for CoS, 25% for Bumble Bee, and 36% for StarKist. Bualuang Securities reported the shares for the domestic canned tuna market slightly differently, with StarKist at 30%, Bumble Bee at 28% and CoS at 20%.

23.    This oligopolistic structure within the industry is the result of recent mergers and acquisitions. For example, in 1997, Van Camp Seafood Company ("Van Camp") was acquired by the investment group Tri-Union Seafoods LLC, of which TUF was a member. Thereafter, TUF bought out the other investors to acquire Van Camp completely, which it renamed Chicken of the Sea International, an entity that was later merged into Tri-Union Seafoods LLC. In 2008, Dongwon acquired StarKist from Del Monte Foods for $363 million. Similarly, in 2014, TUF bought King Oscar, a Norwegian sardine canner that sold 37% of its products in the United States. And in December of 2014, TUF announced the acquisition of

Bumble Bee from Lion (subject to regulatory approval) for $1.51 billion. The combination of TUF-owned CoS with Bumble Bee would have created a virtual duopoly, with the combined entity substantially exceeding the market share of StarKist. TUF had planned to finance the acquisition partly through a preferential public offering to existing shareholders that would have raised approximately $380 million.

24.     On July 23, 2015, TUF suspended the preferential public offering in light of a grand jury investigation commenced by the Antitrust Division of the United States Department of Justice ("DOJ"). TUF disclosed on that day that both Bumble Bee and CoS had received grand jury subpoenas relating to an antitrust investigation of PSPs. The publication *Undercurrent News* further reported in an article dated that same day that "Thai Union [TUF] held a conference with analysts on the suspension of the share offer, in which the company's management said other US seafood producers have also received a subpoena requiring the production of relevant information to the DOJ." The publication *Global Competition Review* similarly reported as follows:

> In a letter to the Bangkok stock exchange on Wednesday, Thai Union chairman Kraisorn Chansiri confirmed that the US Department of Justice is investigating his company's sector, causing Thai Union to suspend a stock issuance that had been intended to finance the $1.5 billion acquisition of Bumble Bee.
>
> He said the Thai Union subsidiary Tri-Union Seafoods, which operates in the US under the Chicken of the Sea brand, had received a subpoena "requiring Tri-Union to provide relevant information to the DoJ in relation to an antitrust investigation of the packaged seafood industry in the United States."

25.     The article goes on to state:

> An industry expert said the subpoena does not appear to be limited to the merger review, and early information indicates the demand for information came from a separate section of the antitrust division, not one tasked with analysing deals.
>
> It is highly likely that something produced in the merger investigation sparked this investigation touching the

industry as a whole rather than just the parties to the deal,
he said.

****

The source said others in the industry are now
anticipating that they too will be subpoenaed….

26.     Based on these statements, it appears that StarKist received a subpoena
as well and that the DOJ's investigation extends to the entire domestic PSP sector.

27.     The fact that these companies received subpoenas from a federal grand
jury is significant, as is reflected in Chapter 3 of the 2014 edition of the DOJ's
*Antitrust Division Manual*, available at http://www.justice.gov/atr/public/
divisionmanual/chapter3.pdf. Section F.1 of that chapter notes that "staff should
consider carefully the likelihood that, if a grand jury investigation developed
evidence confirming the alleged anticompetitive conduct, the Division would
proceed with a criminal prosecution." *Id.* at III-82. The staff request needs to be
approved by the relevant field chief and is then sent to the Antitrust Criminal
Enforcement Division. *Id.* "The DAAG [Deputy Assistant Attorney General] for
Operations, the Criminal DAAG, and the Director of Criminal Enforcement will
make a recommendation to the Assistant Attorney General. If approved by the
Assistant Attorney General, letters of authority are issued for all attorneys who will
participate in the grand jury investigation." *Id.* at III-83. "The investigation should
be conducted by a grand jury in a judicial district where venue lies for the offense,
such as a district from or to which price-fixed sales were made or where
conspiratorial communications occurred." *Id.*

28.     There are economic indications that support the conclusion that there
was collusive pricing within the domestic PSP industry.

CLASS ACTION COMPLAINT

-7-

29.   Consumption of PSPs, particularly canned tuna, has declined over the last ten years in the United States. The annual consumption per person was 3.1 lbs. in 2005, but had fallen to 2.3 lbs. in 2013. An article in the *Washington Post* graphically represented this decline by measuring United States annual *per capita* consumption from 1930 to 2010:



The same article presented this graph, showing that while Americans are buying less canned seafood, they are paying more for what they do buy:



32.   Given this decline in consumption of the signature PSP, one would expect rational businesses to reduce the prices for PSPs, but that did not happen. The following chart, taken from data available at the Bureau of Labor Statistics,

CLASS ACTION COMPLAINT
-8-

depicts seasonally adjusted U.S. city average prices for shelf stable fish and seafood from January 2005 through the first part of 2015, with the period 1982-84 used as a baseline.



33.     Raw material costs do not adequately explain these price increases. While the cost per metric ton of skipjack tuna rose in 2012 and early 2013, it declined precipitously thereafter. According to the April 19, 2015 issue of *Tuna Market Intelligence*, "[a]s recently as June last year, skipjack was selling at US$1,800 in Bangkok. But the price has since plummeted to US$1,000 since the beginning of the year, with industry officials anticipating further reductions in price this year." Tuna exporters in Ecuador noted in January of 2015 that the price per metric ton had declined from $1400 to $800. And the United Nations Food & Agriculture Organization noted in its May 2015 "Food Outlook" biannual report noted that tuna prices had dropped considerably in 2014: "tuna prices declined significantly due to excess supply, with frozen skipjack prices hitting a 6-year low." Despite these drastically declining raw material costs, Defendants did not decrease prices and try to obtain more market share.

CLASS ACTION COMPLAINT
-9-

34.    TUF's Annual Reports discuss this situation. In its 2013 Annual Report, TUF stated that "our branded tuna business showed resilient growth from 2012 thanks to the price adjustments in Europe and *more rational market competition in the US*." (Emphasis added.) It said in the same report that its future profit margins would depend upon *"[r]easonable US canned tuna competition without unnecessary price*." (Emphasis added.) In its 2014 Annual Report, TUF explicitly noted that this goal had been achieved. It stated:

> *Thanks to reduced price competition (absence of cut throat pricing)* and generally lower fish cost, *our own tuna brands marked a great year of increased profitability.* Despite minimal sales growth in the US, competitive inventory cost and reasonable market conditions helped lift the margin of our US brand. (Emphases added.)

The same report went on to note that "*sensible market competition*, supported by lower raw material costs, made it possible for our own tuna brands to expand their margins through the year despite limited volume growth." (Emphasis added.) It indicated that future revenue growth would again be dependent upon *"[r]easonable US canned tuna market competition that focuses more on consumption creation than market share alone*." (Emphasis added.) The "reasonable market conditions", "more rational market competition", "sensible market competition", avoidance of battles for market share and "absence of cut throat pricing" that the reports note could only have come about through collusion. It would have been against the individual self-interest of each Defendant to eschew increasing market share during this period by lowering prices.

35.    There were numerous business opportunities for Defendants to meet and engage in such collusion. One such opportunity is provided by the Tuna Council. As explained on that organization's website:

> The National Fisheries Institute's Tuna Council represents the largest processors and household names for canned and pouch tuna in the U.S. including *Bumble Bee®, Chicken of the Sea® and StarKist®.* The Tuna Council speaks for the tuna industry on numerous issues

including food safety, labeling, sustainability, nutrition education and product marketing.

36.     An example of such joint conduct is provided by the "Tuna the Wonderfish" advertising campaign of 2011-12. This campaign was bankrolled by the Defendants and carried out under the auspices of the Tuna Council with the support of Thai processors. In it, the Defendants teamed up for marketing purposes. Joe Tuza, Senior Vice-President of Marketing for StarKist, reportedly said that "[w]e worked together surprisingly well." He said further that the campaign, intended to increase consumption of tuna, was based on the hope that "as the water level rises…all boats rise with the tide," referring to the three Defendant companies. The same philosophy appears to undergird the alleged price-fixing conspiracy.

37.     Another opportunity to collude was provided through bilateral copacking agreements between Bumble Bee and CoS. Bumble Bee copacks for CoS at the former's plant located in Santa Fe Springs, California with respect to West Coast sales. CoS does the same for Bumble Bee at the former's plant in Georgia with respect to East Coast sales. Thus, even before the proposed merger, these two companies were cooperating closely. These interlocking relationships provided an excellent opportunity to collude on pricing.

38.     The interlocking relationship between Defendants is also demonstrated by the movement of executives among the companies. For example, in October 2011, John Engle, former VP of marketing for Bumble Bee, replaced Bob Montano as president of King Oscar's United States operations. Similarly, in July 2014, Brett Butler, the former Plant Manager of StarKist's plant in American Samoa, left the company to join Bumble Bee in August 2014, and relocated to Bumble Bee's San Diego headquarters, where Tri-Union is also based.  It was only a few months later, in December 2014, that the proposed acquisition of Bumble Bee by Tri-Union's

parent company was announced. Such movement of executives suggests further opportunities for collusion among all three companies.

39.     A further opportunity to collude arose in October 2011, when Defendants Bumble Bee, Tri-Union, and StarKist jointly prepared and submitted, on joint letterhead with the logos of all three companies, a petition to the Food and Drug Administration ("FDA") to amend certain FDA regulations governing the standard of fill and forms of pack for canned tuna.  The following is an excerpt from the first page of the petition, showing the three companies' joint letterhead with their logos:

  

October 17, 2011

**BY HAND**

Division of Dockets Management
Food and Drug Administration
Department of Health & Human Services
5630 Fishers Lane, Rm. 1061
Rockville, MD 20852

**CITIZENS PETITION**

40.     In the same month, these Defendants also jointly applied to the FDA for a temporary marketing permit to test-market canned tuna that deviates from the standard of fill and forms of pack required by certain FDA regulations, claiming that existing regulations are "obsolete" and that the proposed deviations would "provide[] a canned tuna product that is more appealing to consumers." On information and belief, the joint application and petition could not have been

---

CLASS ACTION COMPLAINT
-12-

prepared absent numerous communications among Defendants concerning PSPs, the market for PSPs, production volumes of PSPs, and the impact of the proposed changes on production costs and therefore pricing for PSPs.

41.     Yet another opportunity to conspire arose in February 2014, when Defendants Bumble Bee and StarKist entered into a "joint defense, common interest and confidentiality agreement," in which they stated that "it may be useful and in their best interests to exchange certain information" and "to cooperate" with each other concerning certain pending litigation involving canned tuna:

JOINT DEFENSE, COMMON INTEREST
AND CONFIDENTIALITY AGREEMENT

This Joint Defense, Common Interest and Confidentiality Agreement (the "Agreement"), made as of this *28* day of February 2014, is entered into by the undersigned counsel acting on behalf of their respective clients, StarKist Co. and Bumble Bee Foods, LLC (collectively the "Parties"), with their full knowledge, consent and authority to execute the Agreement on their behalf.

## FRAUDULENT CONCEALMENT AND TOLLING

42.     Plaintiffs and members of the Classes did not discover and could not discover through the exercise of reasonable diligence the existence of the combination and conspiracy alleged herein until shortly before this litigation commenced.

43.     As indirect purchasers of PSPs manufactured by defendants, Plaintiffs and the members of the Classes had no direct contact or interaction with Defendants, and therefore no means from which they could have discovered the combination and conspiracy alleged in this Complaint until shortly before the lawsuit was filed.

CLASS ACTION COMPLAINT
-13-

44.     It was not until approximately July 23, 2015, that information first became publicly available that Defendants engaged in the combination and conspiracy alleged herein.  That is when the DOJ's ongoing investigation and grand jury subpoenas described above were first publicly disclosed, and when TUF announced that it was suspending its preferential public offering because of the pending investigation.  Prior to that date, Plaintiffs and members of the Classes had no reason to suspect that any combination or conspiracy had been formed.

45.     By their very nature, price-fixing conspiracies tend to be inherently self-concealing.  Plaintiffs are informed and believe that Defendants agreed among themselves to conceal their unlawful conspiracy, including by agreeing not to discuss the conspiracy publicly and by other means of avoiding detection and maintaining secrecy.  Accordingly, a reasonable person under the circumstances would not have been alerted to any irregularity with regard to PSP prices before late July 2015 at the earliest, and Plaintiffs and members of the Classes could not have discovered the alleged contract, conspiracy, or combination at an earlier date by the exercise of reasonable diligence.

46.     As a result of the Discovery Rule and Defendants' fraudulent concealment of their conspiracy, the running of any statute of limitations has been tolled with respect to any claims that Plaintiffs and members of the Classes have as a result of the anticompetitive conduct alleged in this Complaint.

## CLASS ACTION ALLEGATIONS

47.     Plaintiffs brings this action on their own behalf and as a class action pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following Class (the "Nationwide Class"):

> All persons and entities that indirectly purchased packaged seafood products within the United States, its territories and the District of Columbia from any Defendant or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2005, and the present.  Excluded from the class are governmental entities, Defendants, any parent, subsidiary or affiliate

thereof, and Defendants' officers, directors, employees, and immediate families.

48.   Plaintiffs also bring this action on their own behalf and as a class action pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following Classes:

a.   All persons and entities that indirectly purchased packaged seafood products within Oregon from any Defendant or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2005, and the present.  Excluded from the class are governmental entities, Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and immediate families (the "Oregon Indirect Purchaser Class");

b.   All persons and entities that indirectly purchased packaged seafood products within Illinois from any Defendant or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2005, and the present.  Excluded from the class are governmental entities, Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and immediate families (the "Illinois Indirect Purchaser Class");

c.   All persons and entities that indirectly purchased packaged seafood products within Maine from any Defendant or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2005, and the present.  Excluded from the class are governmental entities, Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and immediate families (the "Maine Indirect Purchaser Class");

d. All persons and entities that indirectly purchased packaged seafood products within Wisconsin from any Defendant or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2005, and the present.  Excluded from the class are governmental entities, Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and immediate families (the "Wisconsin Indirect Purchaser Class");

49.    Plaintiffs do not know the exact number of members of the Classes because such information is in the exclusive control of Defendants.  Due to the nature of the trade and commerce involved, however, Plaintiffs believe that Class members number at least in the thousands and are sufficiently numerous and geographically dispersed throughout the United States, its territories and the District of Columbia so that joinder of all Class members is impracticable.

50.    There are questions of law and fact which are common to the claims of Plaintiffs and the Classes, including, but not limited to:

a.    Whether Defendants engaged in a combination or conspiracy with their co-conspirators to fix, raise, maintain, and/or stabilize the prices for PSPs;

b.    Whether the purpose and/or effect of the acts and omissions alleged herein was to restrain trade, or to affect, fix, control, and/or maintain the prices for PSPs;

c.    The existence and duration of the horizontal agreements alleged herein to fix, raise, maintain, and/or stabilize the prices for PSPs;

d.    Whether Defendants violated Section 1 of the Sherman Act (15 U.S.C. § 1);

e.    Whether Defendants violated the state law of Oregon, Illinois,

CLASS ACTION COMPLAINT

-16-

1    Maine or Wisconsin;

2              g.    Whether Defendants' agents, officers, employees, or

3    representatives participated in correspondence and meetings in furtherance of the

4    illegal conspiracy alleged herein, and, if so, whether such agents, officers,

5    employees, or representatives were acting within the scope of their authority and in

6    furtherance of Defendants' business interests;

7              h.    Whether, and to what extent, the conduct of Defendants caused

8    injury to Plaintiffs and members of the Classes, and, if so, the appropriate measure

9    of damages; and

10             i.    Whether Plaintiffs and members of the Classes are entitled to

11   injunctive relief to prevent the continuation or furtherance of the violation of

12   Section 1 of the Sherman Act, or the state laws of Oregon, Illinois, Maine, or

13   Wisconsin;

14   51.    Plaintiffs' claims are typical of the claims of the members of the

15   Classes.

16   52.    Plaintiffs will fairly and adequately assert and protect the interests of

17   the Classes. Plaintiffs' interests are coincident with, and not antagonistic to, those

18   of the other members of the Classes.

19   53.    Plaintiffs are represented by counsel competent and experienced in the

20   prosecution of antitrust and class action litigation.

21   54.    The questions of law and fact common to the members of the Classes

22   predominate over any questions affecting only individual members.

23   55.    A class action is superior to other available methods for the fair and

24   efficient adjudication of this controversy because:

25             a.    The prosecution of separate actions by individual members of

26   the Classes would create a risk of inconsistent or varying adjudications, establishing

27   incompatible standards of conduct for Defendants.

28             b.    The Classes are readily definable.

CLASS ACTION COMPLAINT                    -17-

c.       Prosecution as a class action will eliminate the possibility of repetitious litigation.

d.       Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would require.

e.       Class treatment will permit the adjudication of relatively small claims by many Class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this complaint on an individual basis.

56.     This class action presents no difficulties of management that would preclude its maintenance as a class action.

## COUNT I

### Violation of Section 1 of the Sherman Act (15 U.S.C. § 1)

### (On Behalf of Plaintiffs and the Nationwide Class)

57.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

58.     Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy to artificially fix, raise, maintain, and/or stabilize the prices of PSPs within the United States, its territories, and the District of Columbia in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

59.     Defendants and their co-conspirators agreed to, and did in fact, restrain trade or commerce by fixing, raising, maintaining, and/or stabilizing at artificial and non-competitive levels, the prices of such PSPs.

60.     In formulating and effectuating their contract, combination or conspiracy, Defendants and their co-conspirators engaged in anticompetitive activities, the purpose and effect of which were to artificially fix, raise, maintain and/or stabilize the price of PSPs.

CLASS ACTION COMPLAINT

-18-

61.   The illegal contract, combination, or conspiracy alleged herein had the following effects, among others:

a.   The prices charged by Defendants to, and paid by, Plaintiffs and members of the Class for PSPs were fixed, raised, maintained and/or stabilized at artificially high and non-competitive levels;

b.   Plaintiffs and members of the Class have been deprived of free and open competition in the purchase of PSPs;

c.   Plaintiffs and members of the Class have been required to pay more for PSPs than they would have paid in a competitive marketplace absent Defendants' price-fixing conspiracy; and

d.   Competition in the sale of PSPs has been restrained, suppressed or eliminated.

62.   During the Class Period, Plaintiffs and the other members of the Nationwide Class purchased PSPs indirectly from Defendants, or their subsidiaries, agents, and/or affiliates, and by reason of Defendants' contract, combination or conspiracy alleged above, paid more for such products than they would have paid in the absence of such conduct.

63.   Defendants' conduct, combination or conspiracy alleged herein is a *per se* violation of section 1 of the Sherman Act, and is ongoing and will continue unless enjoined by the Court.

64.   Pursuant to Section 16 of the Clayton Act (15 U.S.C. §26), Plaintiffs and the other members of the Nationwide Class are entitled to equitable and injunctive relief.

CLASS ACTION COMPLAINT

## COUNT II

### Violation of the Oregon Antitrust Act
### (ORS §§ 646.705 *et seq.*)

### (On Behalf of Plaintiff and the Oregon Indirect Purchaser Class)

65.     Plaintiff Carl Lesher incorporates by reference each paragraph set forth above.

66.     The contract, combination, or conspiracy alleged above violates the Oregon Antitrust Act, which states: "[e]very contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce is declared to be illegal." ORS § 646.725.  Defendants' combinations or conspiracies restrained, suppressed and eliminated price competition for PSPs in Oregon, restrained trade and commerce in Oregon, and caused the prices of PSPs to be raised, fixed, maintained and stabilized at supracompetitive levels, in violation of the Oregon Antitrust Act.

67.     During the Class Period, Plaintiff and the other members of the Oregon Indirect Purchaser Class purchased PSPs indirectly from Defendants, or their subsidiaries, agents, and/or affiliates, and, by reason of Defendants' contract, combination or conspiracy alleged above, paid more for such products than they would have paid in the absence of such conduct.  As a result, Plaintiff and the other members of the Oregon Indirect Purchaser Class have sustained injury and are entitled to all relief available under the Oregon Antitrust Act, including but not limited to treble damages in an amount to be determined at trial, along with attorneys' fees and costs of suit.  *See* ORS § 646.780(1)(a).

68.     In compliance with ORS 646.780(5)(b) a copy of this Complaint has been served on the Oregon Attorney General or shall be served within seven days after the Complaint is filed.

CLASS ACTION COMPLAINT

1
2
3

**COUNT IV**

**Violation of the Illinois Antitrust Act**
**(740 ILCS 10/1 *et seq*.)**

4

**(On Behalf of Plaintiff and the Illinois Indirect Purchaser Class)**

5
6

69.   Plaintiff Sarah Metivier Schadt incorporates by reference each paragraph set forth above.

7
8
9
10
11
12
13

70.   The contract, combination, or conspiracy alleged above violates the Illinois Antitrust Act, which prohibits collective action to effect prices or otherwise unreasonably restrain trade.  740 ILCS 10/3(1) and (2).  Defendants' combinations or conspiracies restrained, suppressed and eliminated price competition for PSPs in Illinois, restrained trade and commerce in Illinois, and caused the prices of PSPs to be raised, fixed, maintained and stabilized at supracompetitive levels, in violation of the Illinois Antitrust Act.

14
15
16
17
18
19
20
21
22

71.   During the Class Period, Plaintiff and the other members of the Illinois Indirect Purchaser Class purchased PSPs indirectly from Defendants, or their subsidiaries, agents, and/or affiliates, and, by reason of Defendants' contract, combination or conspiracy alleged above, paid more for such products than they would have paid in the absence of such conduct.  As a result, Plaintiff and the other members of the Illinois Indirect Purchaser Class have sustained injury and are entitled to all relief available under the Illinois Antitrust Act, including but not limited to treble damages in an amount to be determined at trial, along with attorneys' fees and costs of suit.  *See* 740 ILCS 10/7(2).

23
24
25

**COUNT V**

**Violation of Illinois Consumer Fraud and Deceptive Business Practices Act**
**(815 ILCS 505 *et seq*.)**

26

**(On Behalf of Plaintiff and the Illinois Indirect Purchaser Class)**

27
28

72.   Plaintiff incorporates by reference each paragraph set forth above.

CLASS ACTION COMPLAINT

73. The contract, combination or conspiracy alleged above constitutes "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact … in the conduct of trade or commerce … whether any person has in fact been misled, deceived or damaged thereby" which is prohibited by the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2.) Defendants' combinations or conspiracies resulted in a gross disparity between the value received by the members of the Illinois Indirect Purchaser Class and the price they paid, in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. *See* 815 ILCS 505/2 (defining "unconscionable trade practices").

74. As a result of Defendants' violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2), Plaintiff and members of the Illinois Indirect Purchaser Class paid more for PSPs than they would have in the absence of Defendants' violations. Plaintiff and members of the Illinois Indirect Purchaser Class are therefore entitled to damages from Defendants in an amount to be determined at trial, along with attorneys' fees and costs of suit, as well as all other relief allowable by law. See 815 ILCS 505/10a.

## COUNT VI

### Violation of the Maine Antitrust Act
### (10 M.R.S. §§ 1101 *et seq.*)

### (On Behalf of Plaintiff and the Maine Indirect Purchaser Class)

75. Plaintiff Greg Stearns incorporates by reference each paragraph set forth above.

76. The contract, combination, or conspiracy alleged above violates the Maine Antitrust Act, which states: "[e]very contract, combination in the form of trusts or otherwise, or conspiracy, in restraint of trade or commerce in this State is

declared to be illegal." M.R.S. § 1101.  Defendants' combinations or conspiracies restrained, suppressed and eliminated price competition for PSPs in Maine, restrained trade and commerce in Maine, and caused the prices of PSPs to be raised, fixed, maintained and stabilized at supracompetitive levels, in violation of the Maine Antitrust Act.

77.   During the Class Period, Plaintiff and the other members of the Maine Indirect Purchaser Class purchased PSPs indirectly from Defendants, or their subsidiaries, agents, and/or affiliates, and, by reason of Defendants' contract, combination or conspiracy alleged above, paid more for such products than they would have paid in the absence of such conduct.  As a result, Plaintiff and the other members of the Maine Indirect Purchaser Class have sustained injury and are entitled to all relief available under the Maine Antitrust Act, including but not limited to treble damages in an amount to be determined at trial, along with attorneys' fees and costs of suit.  *See* 10 M.R.S. § 1104.1.

## COUNT VIII

### Violation of the Wisconsin Antitrust Act
### (Wis. Stat. Ann. §§ 133.01 *et seq.*)

### (On Behalf of Plaintiff and the Wisconsin Indirect Purchaser Class)

78.     Plaintiff Karren Fabian incorporates by reference each paragraph set forth above.

79.   The contract, combination, or conspiracy alleged above violates the Wisconsin Antitrust Act, which states: "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce is illegal." Wis. Stat. Ann. § 133.01.  Defendants' combinations or conspiracies restrained, suppressed and eliminated price competition for PSPs in Wisconsin, restrained trade and commerce in Wisconsin, and caused the prices of PSPs to be raised, fixed, maintained and stabilized at supracompetitive levels, in violation of the Wisconsin Antitrust Act.

CLASS ACTION COMPLAINT

80.     During the Class Period, Plaintiff and the other members of the Wisconsin Indirect Purchaser Class purchased PSPs indirectly from Defendants, or their subsidiaries, agents, and/or affiliates, and, by reason of Defendants' contract, combination or conspiracy alleged above, paid more for such products than they would have paid in the absence of such conduct.  As a result, Plaintiff and the other members of the Wisconsin Indirect Purchaser Class have sustained injury and are entitled to all relief available under the Wisconsin Antitrust Act, including but not limited to treble damages in an amount to be determined at trial, along with attorneys' fees and costs of suit.  *See* Wis. Stat. Ann. § 133.18.

## COUNT IX

**Violation of Wisconsin Deceptive Trade Practices Act**
**(Wis. Stat. Ann. § 100.18(1) *et seq.*)**

**(On Behalf of Plaintiff and the Wisconsin Indirect Purchaser Class)**

81.   Plaintiff incorporates by reference each paragraph set forth above.

82.   The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") prohibits a "representation or statement of fact which is untrue, deceptive or misleading." Wis. Stat. Ann. § 100.18(1). By placing PSP into the course of commerce in Wisconsin at prices elevated in the course of a conspiracy, Defendants violated Wisconsin law.

83.   As a result of Defendants' violations of the Wisconsin DTPA, Plaintiff and members of the Wisconsin Indirect Purchaser Class paid more for PSPs than they would have in the absence of Defendants' violations.  Plaintiff and members of the Wisconsin Indirect Purchaser Class are therefore entitled to damages from Defendants in an amount to be determined at trial, along with attorneys' fees and costs of suit, as well as all other relief allowable by law. *See* Wis. Stat. Ann. § 100.18(11)(b)(2).

CLASS ACTION COMPLAINT

-24-

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays:

A.      That the Court determine that this action may be maintained as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to members of the Class;

B.      That the Court adjudge and decree that the contract, combination or conspiracy alleged herein is a *per se* unreasonable restraint of trade in violation of Section 1 of the Sherman Act and the Antitrust Acts of Oregon, Illinois, Maine, and Wisconsin;

C.      That the Court adjudge and decree that the contract, combination or conspiracy alleged herein is a prohibited trade practice under the consumer protection laws of Illinois and Wisconsin;

D.      That the Court enter judgment against Defendants, jointly and severally, in favor of Plaintiffs and the Classes;

E.      That the Court award Plaintiffs and the Classes damages, including treble damages where permitted under the state laws of Oregon, Illinois, Maine and Wisconsin;

F.      That the Court award Plaintiffs and the Classes attorneys' fees and costs as well as pre-judgment and post-judgment interest as permitted by law;

G.      That Defendants and their co-conspirators, their respective successors, assigns, parents, subsidiaries, affiliates and transferees, and their respective officers, directors, agents and employees, and all other persons acting or claiming to act on behalf of Defendants or their co-conspirators, or in concert with them, be permanently enjoined and restrained from, in any manner, directly or indirectly, continuing, maintaining or renewing the combination, conspiracy, agreement, understanding or concert of action, or adopting any practice, plan, program or design having a similar purpose or affect in restraining competition; and

CLASS ACTION COMPLAINT

1    H.    That the Court award Plaintiffs and the Classes such other and further

2  relief as may be deemed necessary and appropriate.

3  DATED:  September 25, 2015

4

5               By:       _/s/  Stuart G. Gross_____
                          Stuart G. Gross (Cal. Bar No. 251019)
6                         Benjamin Klein (NY Bar No. 4265401)
                          (*pro hac to be filed*)
7                         Daniel Goldberg (Cal. Bar No. 287923)
8                         **GROSS & KLEIN**
                          The Embarcadero
9                         Pier 9, Suite 100
                          San Francisco, CA 94111
10                        t (415) 671-4628
                          f (415) 480-6688
11                        sgross@grosskleinlaw.com
                          bklein@grosskleinlaw.com
12                        dgoldberg@grosskleinlaw.com

13

14              By:       _/s/  Robert Taylor-Manning_____
                          Robert Taylor-Manning (Wash. Bar No. 21890)
15                        (*pro hac to be filed*)
16                        **THE LAW OFFICES OF ROBERT TAYLOR-
                          MANNING**
17                        1800 South Jackson St., Suite 123
18                        Seattle, WA  98144
                          t (206) 310-3333
19                        f (206) 299-4010
20                        rtm@taylor-manning.net

21              By:       _/s/  Jerald M. Stein_____
22                        Jerald M. Stein (NY Bar No. 2425098)
                          (*pro hac to be filed*)
23                        **LAW OFFICE OF JERALD M. STEIN**
24                        PO Box 1011
                          835 Main Street
25                        Margaretville, NY 12455-1011
26                        t (845) 586-6111
                          f (845) 586-2815
27                        jmsteinlaw@gmail.com

28

CLASS ACTION COMPLAINT

1

By:      */s/  Keith S. Dubanevich*

2  Keith S. Dubanevich (Ore. Bar  No. 975200)
(*pro hac to be filed*)

3  Steve D. Larson (Ore. Bar  No. 863540)

4  (*pro hac to be filed*)
Mark A. Friel (Ore. Bar  No. 002592)

5  (*pro hac to be filed*)

6  **STOLL STOLL BERNE LOKTING
& SHLACHTER P.C.**

7  209 SW Oak Street, Suite 500

8  Portland, OR 97204
t (503) 227-1600

9  f (503) 227-6840
kdubanevich@stollberne.com

10  slarson@stollberne.com

11  mfriel@stollberne.com

12

13  *Counsel for Plaintiffs Carl Lesher, Sarah Metivier Schadt, Greg Stearns, and Karren Fabian and the Putative Classes*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT     -27-

1

### DEMAND FOR JURY TRIAL

2      Plaintiffs, on behalf of themselves, and all others similarly situated, demand a

3   trial by jury of all claims so triable.

4   DATED:  September 25, 2015

5
                    By:     _/s/  Stuart G. Gross_____
6                           Stuart G. Gross (Cal. Bar No. 251019)
                            Benjamin Klein (NY Bar No. 4265401)
7                           (*pro hac to be filed*)
                            Daniel Goldberg (Cal. Bar. No. 287923)
8                           **GROSS & KLEIN**
                            The Embarcadero
9                           Pier 9, Suite 100
                            San Francisco, CA 94111
10                          t (415) 671-4628
                            f (415) 480-6688
11                          sgross@grosskleinlaw.com
                            bklein@grosskleinlaw.com
12                          dgoldberg@grosskleinlaw.com
13

14
                    By:     _/s/  Robert Taylor-Manning_____
15                          Robert Taylor-Manning (Wash. Bar No. 21890)
                            (*pro hac to be filed*)
16                          **THE LAW OFFICES OF ROBERT TAYLOR-**
                            **MANNING**
17                          1800 South Jackson St., Suite 123
18                          Seattle, WA  98144
19                          t (206) 310-3333
                            f (206) 299-4010
20                          rtm@taylor-manning.net
21

22
                    By:     _/s/  Jerald M. Stein_____
23                          Jerald M. Stein (NY Bar No. 2425098)
                            (*pro hac to be filed*)
24                          **LAW OFFICE OF JERALD M. STEIN**
                            PO Box 1011
25                          835 Main Street
                            Margaretville, NY 12455-1011
26                          t (845) 586-6111
27                          f (845) 586-2815
                            jmsteinlaw@gmail.com
28

CLASS ACTION COMPLAINT                          -28-

1

2          By:      _____/s/  Keith S. Dubanevich_____
                    Keith S. Dubanevich (Ore. Bar  No. 975200)
3                   (*pro hac to be filed*)
4                   Steve D. Larson (Ore. Bar  No. 863540)
                    (*pro hac to be filed*)
5                   Mark A. Friel (Ore. Bar  No. 002592)
6                   (*pro hac to be filed*)
                    **STOLL STOLL BERNE LOKTING**
7                   **& SHLACHTER P.C.**
8                   209 SW Oak Street, Suite 500
                    Portland, OR 97204
9                   t (503) 227-1600
10                  f (503) 227-6840
                    kdubanevich@stollberne.com
11                  slarson@stollberne.com
12                  mfriel@stollberne.com

13                  *Counsel for Plaintiffs Carl Lesher, Sarah Metivier*
14                  *Schadt, Greg Stearns, and Karren Fabian and the*
                    *Putative Classes*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT
                              -29-